UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

**CIVIL ACTION NO. 2:12-cv-192 (WOB-JGW)**

**ELZA L. HARRELL**                                                                    **PLAINTIFF**

**VS.**

**OFFICE OF PERSONNEL MANAGEMENT, ET AL.**                 **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Elza Harrell ("Harrell"), proceeding pro se, challenges the decision of the Office of Personnel Management ("OPM") denying his request to change the life insurance election he made upon his retirement from the U.S. Postal Service in 2005. Liberally construing the complaint, Harrell asserts claims under the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 701-796*l*, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500-706.

The matter is currently before the Court on Defendants' motion to dismiss or, in the alternative, motion for summary judgment (Doc. 27). The Court has reviewed the parties' briefs and concludes that oral argument is not necessary. For the following reasons, the Court grants Defendants' motion.

**I. FACTS**

Harrell retired from the U.S. Postal Service on May 19, 2005. (Doc. 28-2, A.R., at 2.) On May 21, 2005, Harrell completed a Standard Form 2818 ("SF 2818") -- entitled Continuation of Life Insurance Coverage -- on which he chose to continue his Basic coverage under the Federal Employees' Group Life Insurance ("FEGLI") Program with a 75 percent reduction. (*Id.* at 12.) Harrell alleges that he

1

was "under extreme mental duress" and taking anti-depressants as well as anti-psychotics to treat post-traumatic delayed stress syndrome and extreme depression brought on by a tour of duty in Vietnam. (Doc. 5, Amended Complaint, at 2).

In February of 2012, Harrell reviewed his retirement paperwork with his wife. She became concerned when she saw that Harrell had continued his life insurance coverage at a 75 percent reduction. Harrell subsequently contacted the Office of Personnel Management ("OPM") and alleges that OPM directed him to send a letter requesting a change from a 75 percent reduction to a zero reduction in his FEGLI benefit. (*Id.*)

Harrell alleges that he sent such a letter and that OPM informed him in May of 2012 that they had lost the letter. Harrell sent a second letter via certified mail in July of 2012, which he alleges OPM also lost despite the fact that someone signed for it. Harrell finally sent a copy of the letter to OPM via fax. (*Id.*)

## II. PROCEDURAL HISTORY

OPM received the fax and issued an initial decision denying Harrell's request to change his FEGLI election. Harrell timely requested reconsideration of that initial decision, but OPM denied reconsideration and issued a final administrative decision on August 21, 2012. (Doc. 28-3, A.R., at 2-3.)

Harrell then filed suit in this Court against OPM and its Associate General Counsel, Richard Allan Miller ("Miller"), on September 18, 2012 (Doc. 1). On April 15, 2014, Defendants filed the

instant motion to dismiss or, in the alternative, motion for summary judgment (Doc. 27).

### III. ANALYSIS

Pursuant to the Federal Employees' Group Life Insurance Act ("FEGLIA"), 5 U.S.C. §§ 8701-8716, OPM purchases life insurance policies for federal government employees who participate in the FEGLI program. But the government is not the insurer; it is the policyholder under a commercial insurance policy. *Kimble v. United States*, 345 F.2d 951, 952 (D.C. Cir. 1965).

Although the federal government has given consent to be sued under FEGLIA, 5 U.S.C. § 8715, federal courts have construed that consent narrowly. "The statutory scheme presupposes that claimants will assert their own rights." *Kimble*, 345 F.2d at 952.

**A. Defendant Miller is not a proper party to this action.**

The Supreme Court has held that "a *pro se* complaint . . . must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), but Harrell's complaint still fails to "give [Miller] fair notice of what the . . . claim is and the grounds upon which it rests," *id.* at 93 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted).

Harrell's amended complaint does not meet Federal Rule of Civil Procedure 8(a)(2)'s pleading standard as to Miller for three reasons. First, the amended complaint mentions Miller only in the caption. Second, OPM has produced uncontroverted and corroborated evidence that Miller did not participate in the denial of Harrell's request to

change his FEGLI election. (Doc. 28-1, Pearson Decl., at ¶ 12; Doc. 28-3, Miller Decl., at ¶¶ 1-2.) Finally, Harrell's argument that Miller was the individual who approved the denial of his request to change his FEGLI election is contradicted by the record; that individual was Joseph E. Miller and not Defendant Richard Allan Miller. (Doc. 28-2, A.R., at 0003.)

Because Miller is not a proper party to this action, the Court accordingly dismisses him as a defendant.

### B. OPM is entitled to summary judgment on Harrell's Rehabilitation Act claim.

Harrell's amended complaint references the Americans with Disabilities Act of 1990, but he intends to assert a claim under the Rehabilitation Act, 29 U.S.C. §§ 701-796*l*, which prohibits disability discrimination in federal employment.

In order to bring a claim under the Rehabilitation Act, a plaintiff must first exhaust his administrative remedies by filing a charge of discrimination with the EEOC. *Smith v. U.S. Postal Serv.*, 742 F.2d 257, 262 (6th Cir. 1984) ("Congress has not enacted one set of principles excusing exhaustion in handicap cases and another set of principles requiring exhaustion in sex, race, national origin, and age discrimination cases."). Uncontroverted evidence in the record demonstrates that Harrell never filed such a charge. (Doc. 28-4, Jones Decl., at ¶¶ 1-2.)

Because Harrell's failure to exhaust his administrative remedies deprives this Court of subject-matter jurisdiction, *Jones v. Sumser Ret. Vill.*, 209 F.3d 851, 853 (6th Cir. 2000) ("'Federal courts do not have subject matter jurisdiction of Title VII claims unless the

4

claimant explicitly files the claim in an EEOC charge or the claim can reasonably be expected to grow out of the EEOC charge.'" (quoting *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998))), the Court accordingly grants summary judgment to OPM on Harrell's Rehabilitation Act claim.

**C. OPM is entitled to summary judgment on Harrell's APA claim.**

Harrell's amended complaint does not specifically reference the APA, 5 U.S.C. §§ 500-706, but Defendants treat Harrell's claim as one for judicial review of OPM's decision to deny Harrell's request to change his FEGLI election. "A court reviews OPM action under . . . FEGLIA pursuant to the [APA], based on the administrative record that was before OPM when it made its determination." *Schwartz v. U.S. Office of Pers. Mgmt.*, No. DKC 12-1567, 2013 WL 5428719, at *3 (D. Md. Sept. 25, 2013) (citing *Burgin v. Office of Pers. Mgmt.*, 120 F.3d 494, 497 (4th Cir. 1997)).

The APA supplies the standard of review that federal courts must apply to final agency decisions. 5 U.S.C. § 706. Section 706 provides in pertinent part:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall--
>
> (1) compel agency action unlawfully withheld or unreasonably delayed; and
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be--
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . .

5

The Supreme Court has held that an agency's decision is arbitrary and capricious if "the agency has . . . offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Although federal courts "may not supply a reasoned basis for the agency's action that the agency itself has not given," *id.* (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)) (internal quotation marks omitted), they may "'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned,'" *id.* (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974)).

FEGLIA and its implementing regulations govern when and how a federal employee may request to change the FEGLI election made upon his retirement. 5 U.S.C. § 8706(b)(3); 5 C.F.R. § 870.703(a)-(b). Section 8706(b)(3) provides:

> The amount of life insurance . . . shall be continued, with or without reduction, at the end of each full calendar month after the date the employee becomes 65 years of age and is retired or is receiving compensation for disease or injury, in accordance with the employee's written election at the time eligibility to continue insurance during retirement or receipt of compensation arises . . . .

The implementing regulations in 5 C.F.R. § 870.703(a) state that upon retirement a federal employee may choose one of four options with respect to his FEGLI: (1) termination of the insurance, (2) continuation of the insurance with a 75 percent reduction in amount during retirement, (3) continuation with a 50 percent reduction, or (4) continuation with no reduction. Importantly, § 8706(b)(4)

6

provides that an employee may "later cancel [his initial] election and life insurance coverage shall continue as if the individual had original elected coverage under [the 75 percent reduction] . . . ."

The SF 2818 on which Harrell made his FEGLI election also explains when and how a federal employee may change his life insurance coverage following retirement. In a paragraph titled, "***What if I want to change my reduction election?***" the form states:

> You have 30 days from the date you receive your first regular monthly annuity check to change your reduction election. Write to us and tell us what you want to change. After than time, you . . . may only change to 75% Reduction and not to 50% Reduction or No Reduction. If you . . . change to 75% Reduction, we will compute the amount of your Basic as if you had originally elected 75% Reduction. Premiums will stop and you will ***not*** receive a refund of premiums already paid.

(Doc. 28-1, Pearson Decl. Attach. 1, at 4.)

OPM properly relied on this authority when it issued its final administrative decision denying Harrell's request to change his FEGLI election. (Doc. 28-3, A.R., at 2-3.) Because the SF 2818 clearly states -- consistent with FEGLIA and its implementing regulations -- that a federal employee has 30 days from the date he receives his first annuity check to request a change to his FEGLI election, Harrell was required to request such a change by October 1, 2005. (*Id.* at 3.) It is undisputed that Harrell did not attempt to change his FEGLI election until 2012. Because OPM's decision was not arbitrary and capricious, the Court accordingly grants summary judgment to OPM on Harrell's APA claim.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss or, in the alternative, motion for summary judgment.

Therefore, having heard the parties and the Court being sufficiently advised,

**IT IS ORDERED** that:

(1) Defendants' motion to dismiss or, in the alternative, motion for summary judgment (Doc. 27) be, and is hereby, **GRANTED**;

(2) A separate judgment shall enter concurrently herewith.

This 7th day of November, 2014.



Signed By:
*William O. Bertelsman* WOB
United States District Judge